1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

8
9
10
11
12
13
14

SERGEY MKHITARYAN and SUREN
MKHITARYAN,

            Plaintiffs,

v.

U.S. BANCORP, et al.,

            Defendants.

2:11-CV-1055 JCM (CWH)

15

**ORDER**

16    Presently before the court is plaintiffs', Sergey Mkhitaryan and Suren Mhkitaryan, motion

17 for partial summary judgment on their first cause of action, violations of the Fair Debt Collection

18 Practices Act, 15 U.S.C. § 1692 ("FDCPA").  (Doc. # 70).  Defendants filed responses (docs. ## 86

19 & 89).  Plaintiffs filed a reply.  (Doc. # 94).

20    Also before the court is plaintiffs' motion for partial summary judgment on their sixth and

21 seventh causes of action, negligence and conversion respectively.  (Doc. # 80).  Defendants filed a

22 response (doc. # 98), and plaintiffs filed a reply (doc. # 99).

23 **I.    Factual Background**

24    Plaintiffs and defendants agree to relatively few undisputed facts.  Such situations are rarely

25 appropriate for resolution at the summary judgment stage.  It appears that the parties even dispute

26 the others' undisputed facts.  In dramatic rhetoric, plaintiffs equate the underlying factual scenario

27 to the "Showdown at the O.K. Corral." (Doc. # 94, 6:15).  Conversely, defendants describe the facts

28

**James C. Mahan**
**U.S. District Judge**

1  in the underlying incident as an amicable and respectful encounter where the parties probably started
2  a friendship.  (*See* doc. # 86, 2:27-3:10).

3        In any event, from the parties' motions, the court can extrapolate the following facts.  On
4  April 18, 2007, plaintiff Sergey Mkhitaryan ("Sergey") purchased a BMW in Los Angeles,
5  California.  Sergey purchased the vehicle under a lease agreement with U.S. Bank.  Sometime
6  thereafter, Sergey defaulted for several consecutive months on his payments on the BMW.[1]

7        As part of the lease agreement, U.S. Bank retained the right to repossess the BMW without
8  prior demand in the event of default.  U.S. Bank elected to exercise that right, and instructed Custom
9  Recovery to repossess the vehicle.  Custom Recovery authorized Speedy Recovery, a Nevada
10 licensed vehicle repossessor, to effectuate the repossession.

11       In July 2010, Sergey was living with his father, Suren, in Las Vegas.  Speedy Recovery
12 dispatched an agent, Dennis McGee ("McGee"), to the plaintiffs' residence.  McGee arrived at
13 plaintiffs' residence at approximately 10:21am and saw the BMW parked in the garage.  The garage
14 door was open.  McGee parked his vehicle such that his hood was under the garage door.

15       From this point, the court finds it difficult to differentiate between true and exaggerated facts.
16 At some point all of the following definitely occurred: a tow truck driver, Dennis Jones ("Jones"),
17 arrived at the scene; the Speedy Recovery supervisor, Rudy Sandoval ("Sandoval"), arrived at the
18 scene; Sergey called the police; the police arrived; Sergey gave the keys to the BMW to Speedy
19 Recovery personnel; and, McGee was cited for trespass.

20       The parties' versions of the events that occurred upon McGee's arrival and the turning over
21 the keys by Sergey dramatically differs.  For example, plaintiffs contend that McGee chased Suren
22 around the garage with a baseball bat; defendants contend that the bat was actually McGee's son's
23 toy foam baseball bat and it never left the trunk of McGee's car.  Plaintiffs contend that Speedy
24 Recovery agents yelled and screamed at them with obscenities; defendants counter that any yelling

25

26 ─────────────────

27       [1] Defendants assert, without authenticated citations, that Sergey had been in default for 18
   months.  In any event, plaintiffs admit Sergey was in default and do not appear to dispute the 18
28 months as an accurate length of the default.

**James C. Mahan**
**U.S. District Judge**

1  or obscenities was by tow truck driver Jones, who is not an employee of Speedy Recovery.  Plaintiffs
2  contend that defendants strong armed Sergey with the help of law enforcement to turn over the
3  vehicle; defendants counter that the police just offered a personal opinion about what they believed
4  Sergey should do after hearing both sides of the stories.  Finally, plaintiffs contend that Sergey was
5  handcuffed and forced to turn over the vehicle; defendants counter that they do not know when, or
6  if, Sergey was handcuffed by anyone.

7       Plaintiffs now move for summary judgment on their claims for violations of the FDCPA,
8  negligence and conversion.

9  **II.    Legal Standard**

10      The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings,
11  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,
12  show that "there is no genuine issue as to any material fact and that the movant is entitled to a
13  judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A principal purpose of summary judgment is
14  "to isolate and dispose of factually unsupported claims."  *Celotex Corp. v. Catrett*, 477 U.S. 317,
15  323–24 (1986).

16      In determining summary judgment, a court applies a burden-shifting analysis.  "When the
17  party moving for summary judgment would bear the burden of proof at trial, it must come forward
18  with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.
19  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue
20  of fact on each issue material to its case."  *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213
21  F.3d 474, 480 (9th Cir. 2000) (citations omitted).

22      In contrast, when the nonmoving party bears the burden of proving the claim or defense, the
23  moving party can meet its burden in two ways:  (1) by presenting evidence to negate an essential
24  element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to
25  make a showing sufficient to establish an element essential to that party's case on which that party
26  will bear the burden of proof at trial.  *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party
27  fails to meet its initial burden, summary judgment must be denied and the court need not consider

28

**James C. Mahan**
**U.S. District Judge**

- 3 -

1   the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

2         If the moving party satisfies its initial burden, the burden then shifts to the opposing party

3   to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith*

4   *Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing

5   party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the

6   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions

7   of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th

8   Cir. 1987).

9         In other words, the nonmoving party cannot avoid summary judgment by relying solely on

10   conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045

11   (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the

12   pleadings and set forth specific facts by producing competent evidence that shows a genuine issue

13   for trial. *See Celotex Corp.*, 477 U.S. at 324.

14         At summary judgment, a court's function is not to weigh the evidence and determine the

15   truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*,

16   477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable

17   inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is

18   merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at

19   249–50.

20   **III.   FDCPA Claim**

21         Plaintiffs assert that, as a matter of law, the defendants (Speedy Recovery and the relevant

22   agents) violated the FDCPA in the repossession of the BMW by, among other things, trespassing on

23   private residence, using threats of violence, breaching the peace, and using profane and abusive

24   language. Defendant argues that the FDCPA may not even apply to repossession agents. As a

25   predicate matter, the court must determine whether the FDCPA applies to the conduct of

26   repossession agencies.

27   . . .

28

**James C. Mahan**
**U.S. District Judge**

- 4 -

The purpose of the FDCPA includes, among other things, the elimination of "abusive debt collection practices by debt collectors."  15 U.S.C. § 1692(e).  "Repossession companies are ordinarily beyond the scope of the FDCPA.  The exception to this general rule is set forth in section 1692f(6)."  *Clark v. Auto Recovery Bureau Conn., Inc.*, 889 F.Supp. 543, 546 (D. Conn. 1994); 15 U.S.C. § 1692a(6) ("For purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests."); *accord Pflueger v. Auto Finance Group, Inc.*, No. CV-97-9499, 1999 WL 33740813, at *3 (C.D. Cal. April 26, 1999) ("It thus appears that Congress intended an enforcer of a security interest, such as a repossession agency, to fall outside the ambit of the FDCPA except for the provisions of § 1692(f)(6).") (quoting *Jordan v. Kent Recovery Servs., Inc.*, 731 F.Supp. 652 (D. Del. 19990)); *James v. Ford Motor Credit Co.*, 842 F.Supp. 1202, 12206-07 (D. Minn. 1994).

Plaintiffs allege that defendants violated sections 1692(f)(6) and 1692d(1) and (2).  Plaintiffs provide no argument as to why, contrary to substantial precedent, defendants as repossession agents could be liable as debt collectors under sections 1692d(1) and (2).  The court will analyze all claims against defendants as possibly violative of § 1692f(6).

Section 1692f prohibits debt collectors, or repossession agents, from using "unfair or unconscionable means to collect or attempt to collect any debt."  Specifically, § 1692f(6) prohibits repossession companies or their agents from "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if–(a) there is no present right to possession of the property claimed as collateral through an enforceable security interest."  Section 1692f clearly applies to these defendants.

Plaintiffs allege that defendants' actions on July 10, 2010, violated § 1692f(6) because defendants did not have a present right to the vehicle at this time.  The resolution of this issue requires an interpretation of "present right to possession."  When Speedy Recovery and its agents attempted to repossess the vehicle, it was attempting to enforce the rights in the security property held by U.S. Bank.  If defendants had a "present right" to possession of the property, plaintiffs

James C. Mahan
U.S. District Judge

1    cannot establish a violation of § 1692f(6).

2         "In order to determine whether the secured party had a 'present right' to possession of the

3    collateral, the court must look to state law regarding security interest." *Pflueger*, 1999 WL

4    33740813, at *5 (citing *Clark*, 889 F.Supp. at 546). The applicable state law is NRS 104.9609, titled

5    "Secured party's right to take possession or dispose of collateral after default." This statute provides:

6         "1. After default, a security party:

7         (a) May take possession of the collateral;

8         . . .

9         2. A secured party may proceed under subsection 1:

10        (a) Pursuant to judicial process; or

11        (b) Without judicial process, if it proceeds without breach of the peace."

12   NRS 104.9609. No judicial entity authorized the repossession. So the court must determine if

13   defendants breached the peace when repossessing the BMW from plaintiffs. "This section does not

14   define or explain the conduct that will constitute a breach of the peace, leaving that matter for

15   continuing development by the courts." Comment 3, NRS 104.9609. Further, "this section does not

16   authorize a secured party who repossesses without judicial process to utilize the assistance of law-

17   enforcement officers." *Id.*

18        The facts are ultimately too messy and disputed for the court to hold as a matter of law that

19   defendants breached the peace, though they may have come close.[2]  When agent McGee arrived at

20   Suren's residence, Suren saw him and informed Sergey. Sergey then came into the garage. Plaintiffs

21   argue defendants breached the peace in two ways: (1) by not abandoning the repossession after

22   plaintiffs' "vehement" objections; and (2) the repossession occurred with the presence and blessing

23   of law enforcement.

24   . . .

25

26   _____

27        [2] This is true even though, as plaintiff correctly points out, that some of defendants' exhibits
     in support of their response to the partial summary judgment motion are not properly authenticated
28   pursuant to *Orr v. Bank of America*, 285 F.3d 761 (9th Cir. 2002).

1    Sergey objected to McGee's presence. However, "courts are divided on the issue of whether

2    an unequivocal oral protest amounts to a breach of the peace." *Clarin v. Minnesota Repossessors,*

3    *Inc.*, 198 F.Supp. 661, 664 (8th Cir. 1999) (collecting cases). Further, the court cannot confidently

4    state the facts as they accurately happened after Sergey entered the garage or that Sergey

5    "vehemently" objected to McGee's presence.

6    Plaintiffs argue that there was screaming, shouting, threats of violence, defendant McGee

7    wielded a baseball bat as a weapon, and that defendants and the police strong-armed Sergey into

8    turning over the keys to the vehicle. The court is unconvinced that was the actual series of events.

9    It seems just as likely that Sergey overreacted and called the police, McGee elected to wait for the

10   police to arrive, the police arrived, Speedy Recovery's repossession supervisor Sandoval arrived, and

11   after a conversation among all parties Sergey understood that it was in his best interest to turn over

12   the keys to the vehicle. These major factual discrepancies are for a jury to determine, not a court at

13   the summary judgment stage.

14   Next, plaintiffs contend that defendants breached the peace because police aided defendants

15   in forcing Sergey to surrender the BMW to defendants. The court is unconvinced the facts unfolded

16   in this way. It is true that law enforcement cannot accompany repossession agents to effectuate a

17   repossession without prior judicial process. This rule is rooted in due process. *Cf.* U.S. const.

18   Amends. V, IV; *Fuentes v. Shevin*, 407 U.S. 67 (1972). However, the police did not accompany

19   defendants to repossess the vehicle.

20   Sergey called the police and asked for their intervention. After the arrival of police, their

21   alleged handcuffing of Sergey, and Sergey's conversations with the police and Sandoval, Sergey

22   turned the keys over to Sandoval. It is for a jury to determine, after hearing the facts, whether the

23   police actions blessed the repossession such that Sergey was deprived of due process or whether

24   individual police officers offered a personal opinion and, in the moment, Sergey agreed. It is not

25   clear that the police overrode Sergey's ability to object to the repossession.

26   In sum, plaintiffs' partial summary judgment for a violation of the FDCPA is denied.

27   . . .

28

**James C. Mahan**
**U.S. District Judge**

- 7 -

1

**IV.     Negligence and Conversion**

2        Plaintiffs move for partial summary judgment on their sixth cause of action (negligence) and

3   their seventh cause of action (conversion).  (*See* docs. ## 80 & 98).  These motions are predicated

4   upon this court granting plaintiffs' prior partial summary judgment motion on violations of the

5   FDCPA.

6        Plaintiffs argue that a violation of the FDCPA would establish duty and breach under a

7   negligence per se theory.  *See Ashwood v. Clark County*, 930 P.2d 740, 744 (Nev. 1997) ("A

8   violation of a statute establishes the duty and breach elements of negligence only if the injured party

9   belongs to the class of persons that the statute was intended to protect, and the injury is of the type

10  against which the statute was intended to protect.") (citation omitted).  However, this court denied

11  the partial summary judgment of the FDCPA claims, *see* part III *supra*, so any negligence on the part

12  of the defendants cannot be established under a negligence per se theory.

13       Similarly, plaintiffs' theory for granting partial summary judgment on their conversion claims

14  is predicated on this court finding a violation of the FDCPA.  According to plaintiffs, a violation of

15  the FDCPA is a wrongful possession and a wrongful possession would be a conversion.  *See Evans*

16  *v. Dean Witter Reynolds, Inc.*, 5 P.3d 1043, 1048 (Nev. 2000) (defining conversion as "a distinct act

17  of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with

18  his title or rights therein or in derogation, exclusion, or defiance of such title or rights") (noting that

19  "[w]hether a conversion has occurred is generally a question of fact for the jury.").  This court denied

20  the partial summary judgment on the FDCPA claim, *see* part III *supra*, so plaintiffs have failed to

21  establish a wrongful taking as a matter of law.

22  V.     Conclusion

23       This court denies partial summary judgment on plaintiffs' first, sixth and seventh causes of

24  action for violations of the FDCPA, negligence, and conversion.

25  . . .

26  . . .

27  . . .

28

**James C. Mahan**
**U.S. District Judge**

- 8 -

1

2   Accordingly,

3        IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that plaintiffs' motions for
partial summary judgment (doc. # 70 and doc. # 80) be, and the same hereby, are DENIED.

4        DATED December 12, 2012.

5

6   _____
    **UNITED STATES DISTRICT JUDGE**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**James C. Mahan**
**U.S. District Judge**

- 9 -