UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SERGEY MKHITARYAN and SUREN MKHITARYAN,<br><br>                    Plaintiffs,<br><br>v.<br><br>U.S. BANCORP, et al.,<br><br>                    Defendants. | 2:11-CV-1055 JCM (CWH) |

**ORDER**

Presently before the court is defendants', Speedy Recovery, Inc. and Dennis McGee, motion to exclude expert opinion testimony. (Doc. # 124). Plaintiffs, Sergey and Suren Mkhitaryan, filed a response in opposition (doc. # 130), and defendants Speedy Recovery, Inc. and Dennis McGee filed a reply (doc. # 136).

Also before the court is defendants', Speedy Recovery Inc. and Dennis McGee, motion for partial summary judgment. (Doc. # 128). Plaintiffs, Sergey and Suren Mkhitaryan, filed a response in opposition (doc. # 142), and defendants filed a reply (doc. # 150).

Also before the court is defendants', Speedy Recovery Inc. and Dennis McGee, motion for partial summary judgment. (Doc. # 144). Plaintiffs, Sergey and Suren Mkhitaryan, filed a response in opposition (doc. # 151), and defendants filed a reply (doc. # 154).

Also before the court is defendant U.S. Bank's motion for summary judgment. (Doc. # 147). Plaintiffs, Sergey and Suren Mkhitaryan, filed a response in opposition (doc. # 153), and defendant

**James C. Mahan**
**U.S. District Judge**

U.S. Bank filed a reply (doc. # 160).

Also before the court is the report and recommendation of Magistrate Judge Hoffman. (Doc. # 177). Defendant Dennis McGee filed an objection (doc. # 178), plaintiffs, Sergey and Suren Mkhitaryan, filed a response in opposition (doc. # 179), and defendant Dennis McGee filed a reply (doc. # 180).

Also before the court is plaintiffs', Sergey and Suren Mkhitaryan, motion to strike. (Doc. # 181).

I. **Background**

Sergey Mkhitaryan ("Sergey") and Suren Mkhitaryan ("Suren") are the plaintiffs in this lawsuit. Sergey is Suren's son. When the facts underlying this suit occurred, Sergey lived with Suren.

The defendants in this lawsuit are Speedy Recovery, Inc. ("Speedy"), Dennis McGee ("McGee"), and U.S. Bank. Speedy is a Nevada licensed vehicle repossessor. At the time the facts underlying this suit occurred, Speedy employed McGee as a repossession agent.

This court has already denied a motion for summary judgment by McGee and Speedy on the causes of action for violations of the Federal Debt Collection Practices Act, negligence, and conversion. In denying the motion for summary judgment, the court noted the "major factual discrepancies are for a jury to determine, not a court at the summary judgment stage." *Mkhitaryan v. U.S. Bancorp*, 2:11-cv-1055-JCM-CWH, 2012 WL 6204840, at *4 (D. Nev. Dec. 12, 2012). That statement pertains to the encounter between Speedy agents, including McGee, and plaintiffs. Undeterred, defendants Speedy and McGee have filed two additional motions for partial summary judgment. The outcome is largely the same. Additionally, defendant U.S. Bank has filed a motion for summary judgment.

In April 2007, Sergey entered into a five year lease with U.S. Bank on a brand new, high-end BMW 650. The parties' contract provided, among other things, that upon default, Sergey agreed to return the vehicle. If Sergey failed to return the vehicle upon default, then U.S. Bank could take possession of the vehicle. Sergey defaulted and fell significantly behind in his monthly payments.

**James C. Mahan**
**U.S. District Judge**

- 2 -

1  It appears Sergey fell about 18 months behind in payments. Sergey admits he defaulted.

2  U.S. Bank entered into a contract titled a "Master Services Agreement" with non-party Custom Recovery ("Custom"). Custom provides skip tracing, repossession, and liquidation services for U.S. Bank. The contract provides that Custom is an independent contractor that (1) assumes responsibility for its own actions and (2) is fully responsible and liable for any actions of its subcontractors. The contract further stated that Custom possesses no authority to bind U.S. Bank and that under no circumstances may Custom, its employees, or its agents hold themselves out as employed by U.S. Bank. After Sergey's default, Custom subcontracted repossession of the BMW to defendant Speedy.

The remaining facts the court will largely borrow from its previous order at summary judgment. *See Mkhitaryan*, 2012 WL 6204840 (D. Nev. Dec. 12, 2012). Defendants Speedy and McGee and plaintiffs Sergey and Suren agree to relatively few undisputed facts. Such situations are rarely appropriate for resolution at the summary judgment stage.

It appears that the parties even dispute the others' undisputed facts. In dramatic rhetoric, plaintiffs equate the underlying factual scenario to the "Showdown at the O.K. Corral." Conversely, defendants describe the facts in the underlying incident as an amicable and respectful encounter where the parties probably started a friendship and went to get a beer together after the incident. The facts presented by Speedy, McGee, and the Mkhitaryans could not be further apart.

In any event, from the parties' motions, the court can extrapolate the following facts. Due to Sergey's default, U.S. Bank elected to exercise its right to repossession of the BMW, and instructed Custom to repossess the vehicle. Custom subcontracted with Speedy and authorized Speedy to effectuate the repossession.

In July 2010, Sergey was living with his father, Suren, in Las Vegas. Speedy dispatched agent McGee to the plaintiffs' residence. McGee arrived at plaintiffs' residence at approximately 10:21am and saw the BMW parked in the garage. The garage door was open. McGee parked his vehicle such that his hood was under the garage door and prevented the garage door from closing.

From this point, the court finds it difficult to differentiate between true and exaggerated facts. At some point all of the following definitely occurred: a tow truck driver, Dennis Jones ("Jones"), arrived at the scene; a Speedy supervisor, Rudy Sandoval ("Sandoval"), arrived at the scene; Sergey called the police; the police arrived; Sergey gave the keys to the BMW to Speedy personnel; and, police cited McGee for trespass.

The parties' versions of the events that occurred upon McGee's arrival and the turning over the keys by Sergey dramatically differs. For example, plaintiffs contend that McGee chased Suren around the garage with a baseball bat; defendants contend that the bat was actually McGee's son's toy foam baseball bat and it never left the trunk of McGee's car. Plaintiffs claim that Speedy agents yelled and screamed at them with obscenities; defendants counter that any yelling or obscenities was by tow truck driver Jones, who is not an employee of Speedy. Plaintiffs argue that defendants strong-armed Sergey with the help of law enforcement to turn over the vehicle; defendants counter that the police just offered a personal opinion about what they believed Sergey should do after hearing both sides of the story. Finally, plaintiffs contend that police handcuffed Sergey and forced him to turn over the vehicle to Speedy; defendants counter that they do not know when, or if, Sergey was handcuffed by anyone.

There are eight causes of action in this lawsuit: (1) violations of the FDCPA against Speedy and McGee; (2) negligent hiring and negligent retention against U.S. Bank; (3) assault against all defendants; (4) intentional infliction of emotional distress ("IIED") against all defendants; (5) negligent infliction of emotional distress against all defendants; (6) negligence against all defendants; (7) conversion against all defendants; and, (8) negligent hiring and negligent retention against Speedy.

**II.    Motion in Limine**

The court will lay out the legal standard governing motions in limine and then proceed to a discussion of the relevant case law, federal statutes, and contested expert testimony.

*A.    Legal Standard*

"Although the Federal Rules of Evidence do not explicitly authorize in limine rulings, the

1  practice has developed pursuant to the district court's inherent authority to manage the course of
2  trials." *Luce v. U.S.*, 469 U.S. 38, 41 n.4 (1980).  Judges have broad discretion when ruling on
3  motions in limine.  *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002); *see*
4  *also Trevino v. Gates*, 99 F.3d 911, 922 (9th Cir. 1999) ("The district court has considerable latitude
5  in performing a Rule 403 balancing test and we will uphold its decision absent clear abuse of
6  discretion.").

7  "[I]n limine rulings are not binding on the trial judge [who] may always change his mind
8  during the course of a trial." *Ohler v. U.S.*, 529 U.S. 753, 758 n.3 (2000); *accord Luce*, 469 U.S. at
9  41 (noting that in limine rulings are always subject to change, especially if the evidence unfolds in
10 an unanticipated manner).  "Denial of a motion in limine does not necessarily mean that all evidence
11 contemplated by the motion will be admitted at trial.  Denial merely means that without the context
12 of trial, the court is unable to determine whether the evidence in question should be excluded."
13 *Conboy v. Wynn Las Vegas, LLC*, no. 2:11-cv-1649-JCM-CWH, 2013 WL 1701069, at *1 (D. Nev.
14 April 18, 2013).

15   *B.*  *Discussion*

16   Plaintiffs intend to call an expert witness, Joseph Taylor ("Taylor").  Taylor has been
17 employed in the repossession industry for multiple decades.  Presumably, Taylor will opine that, in
18 his opinion, Speedy was negligent for hiring McGee due to McGee's prior arrest records.

19   Defendants move the court to exclude Taylor's testimony from trial because, according to
20 defendants, Taylor's proposed testimony exceeds the scope of permissive expert testimony and
21 therefore impermissible under Federal Rule of Evidence 702.

22   An expert witness may testify at trial if the expert's "specialized knowledge will assist the
23 trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702. A witness
24 must be "qualified as an expert by knowledge, skill, experience, training, or education" and may
25 testify "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of
26 reliable principles and methods, and (3) the witness has applied the principles and methods reliably
27 to the facts of the case." *Id.*; *see also Kumho Tire v. Carmichael*, 526 U.S. 137, 141, 148–49 (1999).

28

James C. Mahan
U.S. District Judge

- 5 -

1  Expert testimony is liberally admitted under the Federal Rules. *See Daubert*, 509 U.S. 579, 588
2  (1993) (noting that Rule 702 is part of the "liberal thrust of the Federal Rules and their general
3  approach of relaxing the traditional barriers to opinion testimony"); *see also* FED. R. EVID. 702
4  advisory committee notes to 2000 amendments ("[R]ejection of expert testimony is the exception
5  rather than the rule.").

6  The "trial judge must ensure that any and all [expert] testimony or evidence admitted is not
7  only relevant, but reliable." *Daubert*, 509 U.S. at 589. "Concerning the reliability of non-scientific
8  testimony . . ., the *Daubert* factors (peer review, publication, potential error rate, etc.) simply are not
9  applicable to this kind of testimony, whose reliability depends heavily on the knowledge and
10  experience of the expert, rather than the methodology or theory behind it." *Hangarter v. Provident
11  Life & Accident Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004) (citations omitted).

12  In such cases, the trial court's gatekeeping role under *Daubert* involves probing the expert's
13  knowledge and experience. *See id.* at 1018. "It is the proponent of the expert who has the burden of
14  proving admissibility." *Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir.1996).
15  Admissibility of the expert's proposed testimony must be established by a preponderance of the
16  evidence. *See Daubert*, 509 U.S. at 592 n. 10 (citation omitted).

17  Taylor has spent decades in the repossession industry as a repossession agent, owned a
18  repossession company, hired repossession agents, and contributed to national training materials used
19  to treat repossession agents nationwide. Taylor has testified as an expert in repossession matters,
20  including proper hiring practices in the repossession industry. The court finds that Taylor has
21  specialized knowledge in repossession matters. Taylor may testify, based on his specialized
22  experience, about his expert opinion on whether Speedy negligently hired McGee based on McGee's
23  prior arrest record and alleged propensity towards violence.

24  Defendants also seek to exclude Taylor's testimony because, according to defendants, the
25  jury must determine whether Speedy negligently hired McGee. This is true. However, Rule 704
26  states that "[a]n opinion is not objectionable just because it embraces an ultimate issue." "That said,
27  an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate

28

**James C. Mahan
U.S. District Judge**

- 6 -

1  issue of law. Similarly, instructing the jury as to applicable law is the distinct and exclusive province
2  of the court." *Nationwide Transport Finance v. Cass Info. Sys., Inc.*, 523 F.3d 1051, 1058 (9th Cir.
3  2008) (internal citations and quotations omitted).

4  The court finds that Taylor, based on his specialized knowledge in the field, may offer his
5  expert opinion on whether it was negligent to hire McGee based on McGee's background. However,
6  Taylor may not instruct the jury that it was negligent as a matter of law to hire McGee as that is
7  within the sole province of the jury to decide.

8  **III.   Summary Judgment**

9  This court has already denied summary judgment on one occasion and stated that the parties
10 "agree to relatively few undisputed facts. Such situations are rarely appropriate for resolution on the
11 merits." *See Mkhitaryan*, 2012 WL 6204840, at *1 (D. Nev. Dec. 12, 2012). Undeterred, defendants
12 Speedy and McGee filed two additional motions for partial summary judgment. Defendant U.S.
13 Bank, whose liability was not discussed or argued in the previous order on summary judgment, filed
14 its first motion for summary judgment in accordance with the deadlines set by the court.

15 The court will provide the governing legal standard and then discuss the arguments and
16 relevant case law. Additionally, for the reasons stated in section IV *infra*, the court will not discuss
17 the liability for defendant McGee.

18   *A.    Legal Standard*

19 The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings,
20 depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,
21 show that "there is no genuine issue as to any material fact and that the movant is entitled to a
22 judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is
23 "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317,
24 323–24 (1986).

25 In determining summary judgment, a court applies a burden-shifting analysis. "When the
26 party moving for summary judgment would bear the burden of proof at trial, it must come forward
27 with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.

28

**James C. Mahan**
**U.S. District Judge**

- 7 -

1  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue
2  of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213
3  F.3d 474, 480 (9th Cir. 2000) (citations omitted).

4  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the
5  moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential
6  element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to
7  make a showing sufficient to establish an element essential to that party's case on which that party
8  will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party
9  fails to meet its initial burden, summary judgment must be denied and the court need not consider
10 the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

11 If the moving party satisfies its initial burden, the burden then shifts to the opposing party
12 to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith*
13 *Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing
14 party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the
15 claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions
16 of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th
17 Cir. 1987).

18 In other words, the nonmoving party cannot avoid summary judgment by relying solely on
19 conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045
20 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the
21 pleadings and set forth specific facts by producing competent evidence that shows a genuine issue
22 for trial. *See Celotex Corp.*, 477 U.S. at 324.

23 At summary judgment, a court's function is not to weigh the evidence and determine the
24 truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*,
25 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable
26 inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is
27 merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at

28

**James C. Mahan**
**U.S. District Judge**

- 8 -

249–50.

### B. Discussion

The court will address each of the three summary judgments filed by the parties in turn.

#### 1. Defendants Speedy and McGee Motion for Partial Summary Judgment on Claims for Violations of the FDCPA, and Conversion

Defendants filed this motion even though the court denied the plaintiffs' motion for summary judgment on these exact causes of action, and in that order the court stated that: "[t]he facts are ultimately too messy and disputed for the court to hold as a matter of law that defendants breached the peace, though they may have come close." *See Mkhitaryan*, 2012 WL 6204840, at *4 (D. Nev. Dec. 12, 2012). The court denies the motion for all the reasons stated in its prior order. *See id.* Plaintiffs, McGee, and Speedy agree to few facts, and do not agree to any material facts.

The court also denies the motion because it does not cite to a single case, federal statute, or state statute in support of any of its arguments. The motion further does not cite to a single affidavit or exhibit to support the facts alleged in the motion, and not a single exhibit is authenticated. Finally, the motion was filed after the deadline date for filing dispositive motions.

#### 2. Defendants Speedy and McGee Motion for Partial Summary Judgment on the Claim for Assault, IIED, Negligent Infliction of Emotional Distress, and Negligent Hiring and Negligent Retention

The court will address each cause of action in turn.

##### a. Assault

"To establish an assault claim, a plaintiff must show that the actor (1) intended to cause harmful or offensive physical conduct, and (2) the victim was put in apprehension of such contact." *Burns v. Mayer*, 175 F.Supp.2d 1259, 1270 (D. Nev. 2001) (citing Restatement (Second) of Torts, § 21 (1965)).

Suren claims that McGee assaulted him with a bat during the repossession. McGee argues that there was no assault and Suren tripped and fell on his own. Suren fell before Sergey entered the garage. At the time of the fall, Sergey admits he was still inside the house. Other than McGee and

1   Suren, no one witnessed the encounter in the garage between Suren and McGee in the moments just
2   prior to Suren's fall and when Suren fell. Suren says he was assaulted. McGee said that he did not
3   assault Suren. This is a genuine issue of material fact that cannot be resolved at summary judgment.
4       McGee argues that no witness can corroborate Suren's side of the story. This is true.
5   However, it is also true that no witness can corroborate McGee's side of the story. No one witnessed
6   the event but Suren and McGee. They do not agree about what happened. Resolution via summary
7   judgment is not appropriate.

        b.    IIED

9       The elements of an IIED cause of action are: (1) extreme and outrageous conduct with either
10  the intention of, or reckless disregard for, causing emotional distress; (2) plaintiff suffered severe
11  or extreme emotional distress; and, (3) actual or proximate causation. *Star v. Rabello*, 97 Nev. 124,
12  125 625 P.2d 90, 91-92 (Nev. 1981). "Extreme and outrageous conduct is that which is outside all
13  possible bounds of decency and is regarded as utterly intolerable in a civilized community."
14  *Maduike v. Agency Rent-A-Car*, 114 Nev. 1, 4, 953 P.2d 24, 26 (Nev. 1998).
15      As previously held by this court, the parties do not agree on any material facts. Plaintiffs
16  allege that McGee trespassed on their property in order to repossess the BMW, verbally threatened
17  plaintiffs, and then physically threatened plaintiffs with a baseball bat. McGee's supervisor
18  Sandoval later arrived and, according to plaintiffs, threatened plaintiffs, screamed obscenities at
19  them, and strong-armed the repossession with the aid of the police. Defendants' version of the story
20  is that it was all an amicable and friendly encounter. These facts are not amenable to resolution at
21  the summary judgment stage. The parties dispute the others' undisputed facts.
22      The police eventually arrived to sort out the situation. The depositions of the police that
23  arrived on the scene are unhelpful because (1) the police did not witness any of the incident and (2)
24  the officers stated at their depositions that they remembered little meaningful or pertinent
25  information. This claim survives summary judgment.

        c.    Negligent Infliction of Emotional Distress

27      In order for a bystander to recover under a negligent infliction of emotional distress claim,

**James C. Mahan**
**U.S. District Judge**

- 10 -

the following elements must be met: (1) the bystander plaintiff must be closely related to the victim of an accident; (2) the bystander plaintiff must be located near the scene of the accident; (3) the bystander plaintiff must suffer a shock resulting from direct emotional impact stemming from the sensory and contemporaneous observance of the accident. *See Crippens v. Sav on Drug Stores*, 114 Nev. 760, 762, 961 P.2d 761, 762 (Nev. 1998).

This cause of action is asserted on behalf of Sergey. Sergey argues he was harmed when McGee allegedly threatened Suren and caused Suren to fall down.

Sergey can meet the first element because a father to son relationship qualifies as "closely related." However, Sergey cannot meet the second and third elements. Sergey admits he was in the house when his father fell down in the garage. Sergey did not observe the event. Further,"the majority of the cases on negligent infliction of emotional distress have involved automobile accidents." *Crippens*, 961 P.2d at 762. The horror in witnessing a loved one hit by a car would be completely different than seeing a loved one on the ground after falling down from a standing position, especially when there is no battery accompanying the loved one's fall and the plaintiff did not actually witness the fall. Summary judgment in granted in favor of defendants on the negligent infliction of emotional distress claim.

d. Negligent Hiring and Negligent Retention

"The tort of negligent hiring imposes a general duty on the employer to conduct a reasonable background check on a potential employee to ensure that the employee is fit for the position." *Burnett v. C.B.A. Sec. Serv., Inc.*, 107 Nev. 787, 789, P.2d 750, 752 (Nev. 1991). Defendant Speedy argues that it conducted a reasonable background check on McGee. Speedy makes this argument even though the background check failed to uncover McGee's arrests in North Las Vegas for domestic battery. Plaintiffs argue that Speedy's background check should have uncovered the arrest record. This issue is best left for resolution by the jury.

3. U.S. Bank's Motion for Summary Judgment

Sergey and U.S. Bank entered into a lease agreement and Sergey agreed to make monthly payments to U.S. Bank for the subject BMW. After Sergey became 18 months delinquent in his loan

James C. Mahan
U.S. District Judge

- 11 -

payment, U.S. Bank contracted with Custom to recover the BMW. Custom then subcontracted with defendant Speedy to execute the repossession. Plaintiffs allege various tort causes of action against U.S. Bank. Conspicuously, plaintiffs neglected to include Custom as a defendant.

      a.  Negligent Hiring and Retention Against U.S. Bank

Plaintiff's second cause of action asserts a negligent hiring and retention claim against defendant U.S. Bank because of U.S. Bank's alleged hiring of Speedy to conduct the repossession of the BMW.

A claim for negligent hiring or negligent retention fails where there is no employer-employee relationship between the defendant and the person who caused plaintiff's alleged harm. *Latcheran v. Primecare Nevada, Inc.*, no. 2:11-cv-1590-JCM-PAL, 2012 WL 984075, at *5 (D. Nev. March 22, 2012).

U.S. Bank hired Custom via a contract to repossess the BMW. The contract explicitly stated that Custom was an independent contractor and that U.S. Bank would not be liable for any subcontractors hired by Custom. Custom subsequently hired Speedy to execute the repossession. Plaintiffs have offered no facts demonstrating that U.S. Bank was negligent in its decision to hire Custom, or that U.S. Bank negligently retained Custom when U.S. Bank knew, or should have known, that Custom was unfit to conduct the repossession.

Here, U.S. Bank did not hire Speedy or McGee. U.S. Bank employed neither Speedy nor McGee. Plaintiffs have offered no evidence or even alleged that U.S. Bank took part in any part of the decision to hire Speedy to repossess the BMW. The cause of action for negligent hiring and negligent retention is dismissed against U.S. Bank.

      b.  Remaining Claims Against U.S. Bank - Assault, IIED, Negligent Infliction of Emotional Distress, Conversion, and Negligence

Plaintiffs seek to hold defendant U.S. Bank liable of the remaining causes of action (assault, IIED, negligent infliction of emotional distress, conversion, and negligence) on an agency theory–McGee is an agent of Speedy and Speedy is an agent of U.S. Bank.

James C. Mahan
U.S. District Judge

- 12 -

In Nevada, "[a]n agency relationship results when one person possesses the contractual right to control another's manner of performing the duties for which he or she was hired." *Hamm v. Arrow creek Homeowners' Ass'n*, 124 Nev. 290, 300, 183 P.3d 895, 903 (Nev. 2008). "The party asserting the agency relationship has the burden of proving the relationship by a preponderance of the evidence." *Id.*

Plaintiffs have not offered any evidence of an agency relationship between defendant U.S. Bank and Speedy. It would, in fact, be hard to argue that U.S. Bank possessed a contractual right to control Speedy's manner of performing the repossession of the BMW because there was no contract between U.S. Bank and Speedy. Speedy entered into a contract with Custom only. Plaintiffs have not offered evidence that Custom possessed the contractual right to control Speedy's manner of performing the repossession of the BMW.

The court finds that all the evidence shows that neither McGee, Speedy, or any of Speedy's other employees are agents of U.S. Bank. The contract between U.S. Bank and Custom does not provide that U.S. Bank can control the manner in which Custom performs the repossession, much less Speedy. The contract between Custom and U.S. Bank further provided that neither Custom nor its agents or employees could hold themselves out as being employed by U.S. Bank under any circumstances. The contract permitted Custom to subcontract its services, which Custom did by subcontracting with Speedy, but Custom assumed all responsibilities in connection with any subcontracting services.

In sum, the court finds that U.S. Bank did not control the manner that Speedy, or any of Speedy's employees, performed their services as subcontractors for Custom. Summary judgment in favor of U.S. Bank is granted.

**IV.    Report and Recommendation**

Defendant McGee engaged in a series of discovery violations in this case. Due to McGee's consistent refusal to obey court orders, the magistrate judge recommends striking McGee's answer. For the reasons stated *infra*, the court agrees and adopts the report and recommendation in its entirety.

**James C. Mahan**
**U.S. District Judge**

- 13 -

Via interrogatories and depositions, McGee admitted that he had prior arrest and police records. However, McGee never disclosed these records to plaintiffs even though plaintiffs requested the documents. Plaintiffs responded by filing motions to compel the records and motions for sanctions. (*See* docs. ## 52-53 & 81). On August 9, 2012, the magistrate judge held a hearing on the pending motions and ordered defendant McGee to turn over any and all arrest and police records. (*See* doc. # 91).

Defendant McGee again refused to turn over any arrest or police records to plaintiffs. Plaintiffs responded by filing a second wave of motions–a motion to compel, a motion for sanctions, and a motion to strike McGee's answer. (*See* docs. ## 100, 109-10). The magistrate judge, again, ordered McGee to turn over his arrest records. (Doc. # 120). The magistrate judge imposed sanctions against defendant McGee for failing to comply with court orders. (*Id.*). The magistrate judge cautioned McGee that continued failure to comply with court order could lead to more severe sanctions, including striking the answer. (*Id.*).

Defendant McGee, for a third time, refused to turn over any arrest or police records. Plaintiffs responded by filing a third wave of motions seeking to compel production of the records and striking McGee's answer. (*See* doc. # 125). McGee filed a response alleging that he did not have a criminal record. (*See* doc. # 135). The magistrate judge issued a third order. (Doc. # 152). The magistrate judge rejected the contention that McGee did not have a criminal record because McGee had admitted to arrests in his depositions. (*Id.*). The magistrate judge further ordered, for the third time, that McGee must turn over all arrest records and file a declaration that he complied with the order. (*Id.*).

Defendant McGee filed the declaration after the deadline date given by the magistrate judged and vaguely suggested that he had destroyed all arrest and/or police records at some date in the past. Plaintiffs responded by filing a third motion to strike the answer. (Doc. # 155). More than a month later, defendant McGee substituted in new counsel. The magistrate judge permitted new counsel to respond to plaintiffs' third motion to strike the answer. After the briefings became ripe, the magistrate judge issued a report and recommendation whereby the magistrate recommended striking

McGee's answer due to McGee's repeated refusals to comply with court orders and his after-the fact, evasive explanations for failing to comply.

McGee filed objections to the report and recommendation arguing that truth should override delay or docket management concerns by the court. McGee argues that he truthfully disclosed his arrests to plaintiffs' counsel during his deposition. McGee's new counsel further argues that all of McGee's past failure to obey the court's orders were the result of his previous counsel (who no longer represents McGee) and not a deliberate disregard of court orders by McGee. Plaintiffs filed a response arguing that striking the answer is the only appropriate course of action due to McGee's repeated discovery violations.

*A. Legal Standard*

This court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, then the court is required to "make a de novo determination of those portions of the [report and recommendation] to which objection is made." 28 U.S.C. § 636(b)(1).

*B. Discussion*

The court has made a de novo review of the report and recommendation (doc. # 177), the objections to the report and recommendation (doc. # 178), the response to the objections (doc. # 179), the reply to the objections (doc. # 180), the motion to strike the reply to the objections (doc. # 181), and the underlying briefs to the report and recommendation.

The magistrate judge noted that Federal Rule of Civil Procedure 37(b)(2)(A) states that "[I]n a party . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders." "Only willfulness, bad faith, and fault justify terminating sanctions." *Connecticut General Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007) (internal citations and quotations omitted).

The Ninth Circuit "ha[s] constructed a five-part test, with three subparts to the fifth part, to determine whether a case-dispositive sanction under Rule 37(b)(2) is just: (1) the public's interest

in expeditious resolution of litigation; (2) the court's need to manage its dockets; (3) the risk of prejudice to the party seeking sanctions; (4) the public policy favoring disposition of cases on their merits; and, (5) the availability of less drastic sanctions." *Id.* The magistrate judge analyzed each of the five factors.

For the first factor, the magistrate judge found that "McGee's actions have increased the cost of this litigation, needlessly multiplied these proceedings, and wasted resources of the court." (Doc. # 177; 10:2-3). The magistrate judge found that factor one weighed against McGee. Plaintiffs point out that McGee violated more court orders than just the ones pertaining to disclosure of arrest and police records, and that McGee never turned over the records in any event. This court agrees that factor one weighs against McGee. *See generally In re Phenylpropanolamine Products Liability Litigation*, 460 F.3d 1217, 1227 (9th Cir. 2006) ("Orderly and expeditious resolution on the merits is of great importance to the rule of law. By the same token, delay in reaching the merits, whether by way of settlement or adjudication, is costly in money, memory, manageability, and confidence in the process.").

For the second factor, the magistrate judge found "McGee's failures have thwarted the advancement of this case making it difficult for the Court to effectively manage its docket." (Doc. # 177; 10:20-22). The magistrate judge further found that "McGee's evasive and untimely responses appear as though he is ignoring, avoiding, or otherwise refusing to comply with the Court's orders." (*Id.* at 10:14-15). The magistrate judge found that this factor weighs against McGee and this court agrees. *See Thompson v. Housing Authority of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986) (holding that a district court's inherent power to issue sanctions includes, "where appropriate, default or dismissal."); *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642 (1976) (holding that case-dispositive sanctions "must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.").

For the third factor, the court found that McGee "refused to participate in this case through the willful violation of court orders and failure to comply with discovery obligations. These actions

James C. Mahan
U.S. District Judge

- 16 -

are prejudicial as they have impaired the ability of Plaintiffs to prepare for trial." (Doc. # 177; 10:25-27). McGee never turned over his arrest records and provided different excuses at every step for why he believed he did not have to turn over the records. The magistrate judge found this factor weighed against McGee and this court agrees. *See Adriana International Corp. v. Thoern*, 913 F.2d 1406, 1412 (9th Cir. 1990) ("A defendant suffers prejudice if the plaintiff's actions impair the defendant's ability to go to trial or threaten to interfere with the rightful decision of the case.").

For the fourth factor, the magistrate judge found that "McGee's willful refusal to participate in the discovery process has made it impossible for the Court to continue the case with reasonable assurance that Plaintiffs would have access to facts that should have been disclosed." (Doc. # 177; 12: 7-9). This court agrees and this factor weighs against defendants.

For factor five, the magistrate recognized the subparts: "whether the court has considered lesser sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of case-dispositive sanctions." *Connecticut General*, 482 F.3d at 1096. The magistrate judge notes that he: (1) ordered McGee to turn over the records and McGee refused; (2) ordered McGee a second time to turn over the records and imposed sanctions for the first failure to turn over the arrest records; (3) warned McGee that severe sanctions, including case-dispositive sanctions, could be recommended to the district judge; and, (4) McGee refused to turn over the records and now the magistrate judge recommends striking the answer.

There are no other less severe sanctions to impose. The magistrate judge finds this factor weighs against McGee, and this court agrees. *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992) (stating that a pretrial order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.").

McGee does not take exception with any of the magistrate judge's findings in the five-part-test, and does not engage in a detailed discussion, argument, or analysis of the five-part test. McGee does not argue that the magistrate judge applied the wrong law. McGee appeals to courts' preference for resolution on the merits. It is certainly true that courts prefer to resolve cases and controversies on the merits. However, courts cannot resolve cases and controversies on the merits when parties

James C. Mahan
U.S. District Judge

- 17 -

to the litigation willfully ignore and disregard court orders such as McGee has repeatedly done throughout this case. Litigation is not a game played by the rules of one of the parties. The court adopts the report and recommendation in its entirety.

Finally, the magistrate judge points out that at different points in the litigation, McGee has provided ten separate excuses for his failure to disclose his arrest records: (1) no responsive records; (2) not interested in complying; (3) already complied (which was untrue); (4) does not have any criminal records; (5) does not have a copy; (6) plaintiffs already possess the records; (7) misunderstood the terms of the magistrate judge's order; (8) the arrest records are irrelevant; (9) the arrest records are inadmissible; and, (10) defense counsel never told client about the court's order.

In the reply to the objections, McGee provides an eleventh excuse for not complying with the magistrate judge's order. McGee argues, for the first time, that an arrest record from 2005 is sealed. This excuse is ultimately irrelevant and misses the greater point–a party must comply with court orders. Discovery revealed that McGee has *multiple* arrest and police records, and the incidents occurred in different years. McGee argues that the 2005 record is sealed. Even if that were true, it does not justify McGee's failure to disclose all arrest and police records (such as his 2006 record).

The magistrate judge ordered McGee to turn over all criminal records. It is irrelevant if one arrest record out of multiple criminal records is sealed because McGee should have still turned over all the other arrest and/or police records. Even at this late stage McGee continues to refuse to comply with court orders. This is just another evasive and dishonest excuse for not complying with a court order.

Further, it is true that an arrest record may be sealed pursuant to NRS 179.285. When a court orders a record sealed then "[a]ll proceedings recounted in the record are deemed never to have occurred." NRS 179.285. However, McGee has provided no authenticated documents, such as a court order, that corroborate the 2005 arrest record is in fact sealed. Nor has McGee's counsel provided an affidavit of anyone, such as McGee, with personal knowledge of the alleged sealing of the 2005 arrest record. NRS 179.285 does not justify McGee's failure to comply with the magistrate

James C. Mahan
U.S. District Judge

- 18 -

judge's order.[1]

**V.     Conclusion**

The parties conducted an unsuccessful settlement conference in this case prior to the dispositive motions. The parties are ordered to conduct a new settlement conference now that the dispositive motions have been resolved. The parties shall schedule a settlement conference with Magistrate Judge Hoffman at a time and date agreeable to all parties.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that defendants' motion to exclude expert opinion testimony (doc. # 124) be, and the same hereby, is DENIED.

IT IS FURTHER ORDERED that defendants' motion for partial summary judgment (doc. # 128) be, and the same hereby, is DENIED.

IT IS FURTHER ORDERED that defendants' motion for partial summary judgment (doc. # 144) be, and the same hereby, is DENIED.

IT IS FURTHER ORDERED that defendant U.S. Bank's motion for summary judgment (doc. # 147) be, and the same hereby is GRANTED. U.S. BANK is ORDERED to submit an appropriate judgment consistent with this order.

IT IS FURTHER ORDERED that plaintiffs' third motion to strike (doc. # 155) be, and the same hereby, is GRANTED.

IT IS FURTHER ORDERED that the report and recommendation of Magistrate Judge Hoffman (doc. # 177) be, and the same hereby, is ADOPTED in its entirety.

. . .

. . .

. . .

. . .

---

[1] This court is also skeptical, at this stage, that the 2005 record is actually sealed. The only alleged corroborating evidence that the 2005 record is sealed is a sticky tab note on the 2006 record that says a prior 2005 record is sealed. At first glance it appears unofficial. And, in any event, is irrelevant because even if the 2005 record is sealed it does not excuse the failure to turn over all the other records.

James C. Mahan
U.S. District Judge

- 19 -

IT IS FURTHER ORDERED that plaintiffs' motion to strike (doc. # 181) be, and the same hereby, is DENIED as moot.

DATED August 8, 2013.

*/s/ James C. Mahan*
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**